## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE NORTHERN DISCTRICT OF NEW YORK

HARRY A. TEETER,

       *Plaintiff,*

    v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF
VETERAN AFFAIRS, individually and by and
through its agents, officers and/or employees;
THERESA RUDDY, M.D., individually and as an
agent, officer and/or employee of US Dept. of
Veteran Affairs; SAPNA BAZAZ, M.D.,
individually and as an agent, officer and/or
employee of US Dept. of Veteran Affairs; JOHN
D. FEY, M.D., individually and as an agent,
officer and/or employee of US Dept. of Veteran
Affairs, and KALENDA KASANGANA, M.D.,
individually and as an agent, officer and/or
employee of US Dept. of Veteran Affairs.

       *Defendants.*

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Civil No.: <u>5:15-cv-117</u> (DNH/TWD)

---

## COMPLAINT

    Plaintiff, Harry A. Teeter, ("Plaintiff"), by and through his Attorneys, Cherundolo Law Firm,

PLLC, brings this Complaint against Defendants, UNITED STATES OF AMERICA; United States

Department of Veteran Affairs, Theresa Ruddy, M.D., Sapna Bazaz, M.D., John D. Fey, M.D., and

Kalenda Kasangana, M.D., ("Defendants"), all in their individual capacities and/or as agents, officers

and/or employees of the United States Department of Veterans Affairs, and hereby alleges as follows:

## INTRODUCTION

    1.    The medical malpractice alleged in this action relates to the negligence, carelessness and

recklessness of the Defendants herein, which amounted to medical negligence and medical malpractice

with regard to Plaintiff Harry A. Teeter at a time leading up to and including surgery for rectal cancer on November 29, 2011.

2.     The negligent, careless and reckless actions of the Defendants, and each of them, acting individually, jointly and severally has caused the Plaintiff to suffer significant, serious, and permanent disabling injuries, including significant pain, suffering and mental anguish and distress, and has otherwise restricted his ability to engage in the physical activities he had previously enjoyed and has affected his ability to perform basic daily activities of life.

3.     Upon information and belief, as a result of the medical negligence and departures from the standard medical practices, Plaintiff has sustained significant injuries, including but not limited to, bladder injury, permanent colostomy, ostomy bag, incontinence, sterility, erectile dysfunction, retrograde ejaculation, pain and suffering, mental anguish and distress,  as well as multiple  surgeries and procedures, and extension of Rectal Cancer, the significant build-up of scar material and adhesions, and has otherwise been caused to sustain significant deformity and permanent injury to his abdominal cavity, wall, and injury to his bowel and other internal injuries, together with the resultant permanent colostomy which has been determined to be irreversible.  Plaintiff had presented to the Syracuse Veterans Hospital with signs and symptoms that were diagnostic of colon and/or rectal cancer, and for a period of many months, tried to obtain treatment from the VA Hospital, it's agents officers and/or employees, but was confronted with an ongoing array of unanswered and unreturned telephone communications, lack of follow-up from VA personnel, and significant delays in getting appropriate diagnostic and definitive care and treatment.  When he took drastic steps to finally be treated for his symptoms, he was inappropriately treated, and the cancer had gotten so large and extensive by that time, that radiation treatment was applied, thus seriously injuring the abdominal internal organs, and causing the Plaintiff additional care and treatment, including a permanent colostomy which is unrepairable.

4.      Upon information and belief, all of the injuries and disabilities sustained by the plaintiff as set forth above are permanent in nature, and affect his functions of daily life, and further affect all modes of activities.  Plaintiff seeks judgment as against the Defendants, and each of them, for such fair and reasonable amount as may be determined by the trier of fact for the injuries and losses that he has thus sustained.

## PARTIES

5.      At all times referenced herein, Plaintiff was an adult resident and citizen of Syracuse, County of Onondaga and State of New York.

6.      Upon information and belief, the Defendant United States Department of Veteran Affairs, is a Federal entity with its Office of the General Counsel, located at 215 North Main St., White River Junction, Vermont  05009, with a medical facility located and operated at 800 Irving Avenue, Syracuse, New York 13210.

7.      Upon information and belief, and at all times relevant to this action, the defendant, Theresa Ruddy, M.D. is and was an agent, officer and/or employee of United States Department of Veteran Affairs, and is duly licensed to practice medicine in the State of New York and was an attending physician at the Syracuse Veterans Hospital, a hospital owned and operated by the United States of America and Department of Veteran Affairs.

8.      Upon information and belief, and at all times relevant to this action, the defendant, Sapna Bazaz, M.D. is and was an agent, officer and/or employee of United States Department of Veteran Affairs, and is duly licensed to practice medicine in the State of New York, and was an attending physician at the Syracuse VA Hospital, a hospital owned and operated by the United States of America and Department of Veteran Affairs.

3

9.     Upon information and belief, and at all times relevant to this action, the defendant, John D. Fey, M.D., is and was an agent, officer and/or employee of United States Department of Veteran Affairs, and is duly licensed to practice medicine in the State of New York was an attending physician at the Syracuse Veterans Hospital, a hospital owned and operated by the United States of America and Department of Veteran Affairs.

10.     Upon information and belief, and at all times relevant to this action, the defendant, Kalenda Kasangana, M.D., is and was an agent, officer and/or employee of United States Department of Veteran Affairs, and is duly licensed to practice medicine in the State of New York was an attending physician at the Syracuse Veterans Hospital, a hospital owned and operated by the United States of America and Department of Veteran Affairs.

11.     Upon information and belief, each of the defendants herein named, were agents, officers and/or employees of the United States Department of Veteran Affairs, were conducting the practice of medicine within the scope of their employment, and at all times were acting with the full knowledge and consent of each other.

12.     Plaintiff further alleges, that each of the defendants, individually and as agents, officers and/or employees of defendant, United States Department of Veteran Affairs, acted within the scope of and authority of the United States Department of Veteran Affairs, and otherwise within the scope of such knowledge and consent.

## ADMINISTRATIVE CLAIMS

13.     Pursuant to 28 USC Sect. 2401(b), Plaintiff has duly and timely filed Administrative Tort Claims in the standard form (US Government Standard Claim form # 95) as prescribed by the Department of Justice for the events and incidents described throughout this Complaint in accordance

4

with the Federal Tort Claims Act.  A true and correct copy of the Standard Claim form #95 is attached

hereto and marked as **Exhibit "A"**.  The aforesaid Administrative Claims were then personally filed and

served upon the Office of the General Counsel of the Office of the local US Veterans Administration, on

November 26, 2013, and was also served and filed with VA Hospital Office Regional Counsel Georgette

Gonzalez-Snyder, Esq. on November 26, 2013, at the Regional Counsels Office, Region 21, Syracuse

Area Office, located at 800 Irving Ave., Syracuse, NY 13210. A copy of the Affidavit of Service

concerning the above is attached hereto and marked as **Exhibit "B"**, and a copy of the stamped receipt

of the VA Regional Counsel is attached hereto and marked as **Exhibit "C"**.

14.     Thereafter, Plaintiff and his attorneys entered into the Administrative Claims Process

with Counsel for the Defendants herein, and significant additional information was provided to the

Regional Counsel, including medical records, reports, chronologies and other such documents.   An

Amended Claim was served upon the Regional Counsel on or about June 4, 2014, which included an

extensive chronology of the Claims made by the Veteran Plaintiff.  A copy of the Amended Claim is

attached hereto and marked as **Exhibit "D"**.  Thereafter, a personal interview was had during the

Administrative Claims Process, as the Veteran Plaintiff talked freely concerning his claim against the

Government and the VA Administration to Regional Counsel.

15.     By letter dated December 15, 2014, the Government gave the Plaintiff notice that the

Plaintiff's Administrative Claims were denied. A copy of the Government's Denial is attached hereto

and marked as **Exhibit "E"**.  Plaintiff has exhausted all administrative remedies, and now brings this

action within the six-month time limitation as provided under the FTCA, 28 U.S.C. 2401(b).


## JURISDICTION AND VENUE

16.     This Court also has jurisdiction over this action inasmuch as the Claim made is one

against the United States of America, and brought by the Plaintiff pursuant to the Federal Tort Claims

Act, 28 USC Sec. 1346(b), *et seq.,* and 28 USC 2671, *et seq.*

17.     Venue is proper in this district as this is the jurisdiction and venue where the Plaintiff

resides, where the Defendant has a Veterans Administration Hospital, and where the alleged acts of

negligence, carelessness and recklessness are claimed to have occurred.   Additionally, Plaintiff's surgery

and treatment took place in this jurisdiction and the Defendants practiced medicine, performed surgeries

and provided health care at a Veterans Administration Hospital located within the Northern District.

## FACTUAL ALLEGATIONS
## BACKGROUND

18.     Plaintiff hereby repeats and re-alleges the allegations set forth in Paragraphs 1 through

17 of this Complaint as though fully set forth herein.

19.     In the above entitled action, Plaintiff complaining of the Defendants herein, by and

through his attorneys, Cherundolo Law Firm, PLC, hereby alleges as follows:

20.     The Plaintiff, at all times hereinafter mentioned, was a resident of the County of

Onondaga and State of New York.

21.     The Plaintiff presented at the VA Hospital, Syracuse, NY, starting on September 13,

2010 with initial symptoms of diarrhea for a 10-day duration with four to five loose stools per day,

coming with urgency.   The Plaintiff also complained of change in his stool, a flat ribbon like

appearance, which concerned him because he had never seen this before.

22.     Plaintiff was seen by an emergency room physician at the VA Hospital who felt that

infectious diarrhea was a possibility, possibly along with irritable bowel disease, and possibly along with

viral syndrome.   Culture samples were taken for the laboratory, and no additional therapy or history,

investigation, or treatment was undertaken or prescribed

23.     The Veteran-Plaintiff returned to the VA Hospital on September 16, 2010 to be seen by

an orthopedic resident for right trochanteric bursitis.

24.    Plaintiff again returned to the VA Hospital on October 4, 2010 for a flu shot and a recheck of his left knee pain.   On both September 16 and October 4, 2010 the visits were orthopedic and no history contained concerning any of the bowel or diarrhea symptoms, which the Plaintiff complained of during his September 13, 2010 visit.   That notwithstanding, the Plaintiff's bowel symptoms continued.

25.    While at the VA Hospital on November 16, 2010 the Plaintiff saw his primary care physician, Dr. Viglietta.   At that time, his blood tests were reported to him as essentially normal, with low vitamin D and increase in triglycerides.   The plaintiff advised Dr. Viglietta that he was pleased with the relief from hip and knee pain after injections, however, advised that his stool continued to emerge in a flattened shape (like ribbon candy) which he thought was abnormal.

26.    Dr. Viglietta made the assessment that Plaintiff had abnormal stools and referred him to the VA Gastroenterology Clinic for consideration of endoscopy and further workup.

27.    Following the November 16, 2010 office visit, Mr.  Teeter called the Gastroenterology Department numerous times and there would be no response by any person. On each occasion, a voice message was left by the Plaintiff, but his calls were never returned.

28.    Upon information and belief, a communication was sent to the plaintiff by the Gastroenterology Department indicating that they had received a referral from the Plaintiff's primary care provider, Dr. Viglietta.  Upon receipt of the letter, Mr. Teeter called the Gastroenterology Department repeatedly, left numerous voice messages on the answering machines, but never received any return call from the Gastroenterology Department.

29.    The Plaintiff did not hear back from the GI Department and just before Christmas, left for Florida to spend approximately eight weeks in Florida with his family.

30.     While in Florida, the Plaintiff continued calls to the Gastroenterology Department but still received no response. The Plaintiff returned to see Dr. Viglietta on February 10, 2011 for a blood pressure check. He advised Dr. Viglietta that he had lost weight, had been healthy and joined the YMCA.  He also advised him of his problems getting someone to call him back from the Gastroenterology Department. While at the VA on February 10, 2011, Dr. Viglietta saw to it that he had a gastroenterology consult with Dr. Sekou Rawlins for the ongoing diarrhea and flat stools at every bowel movement and now with frequent coating of the stools with blood.

31.     The Plaintiff saw Dr. Rawlins in an office visit of February 20, 2011.  At that time it was felt that the Plaintiff would benefit from a full colonoscopy and advised that "we will arrange". Mr. Teeter awaited his appointment.

32.     By letter dated February 27, 2011, and signed by Ruth Maugeri, the plaintiff was advised that a colonoscopy procedure needed to be scheduled at the Syracuse VA Medical Center.  Mr. Teeter called repeatedly, but an appointment could not be scheduled as no one returned his calls.  A second letter was sent to Mr. Teeter on April 2, 2011 asking him to call GI services to make arrangements for a colonoscopy.

33.     The Plaintiff called consistently to arrange for an appointment for a colonoscopy. Frustrated and angry, he discussed his case with a supervisor at the hospital who eventually set a time for the colonoscopy for June 7, 2011.  The only way that he could arrange such a test was to complain at a high level within the Hospital.

34.     The plaintiff underwent a colonoscopy of June 7, 2011 performed by Theresa Ruddy, M.D.

35.     Dr. Ruddy reported on June 7, 2011 that upon insertion of the scope into the Plaintiff's rectum, a mass was noted 7 cm from the anal verge.  The mass was biopsied multiple times during the

colonoscopy, and the visual appearance was very concerning for rectal cancer. A polyp was also removed from the sigmoid colon during the course of the colonoscopy, but the polyp was not retrieved during the procedure.

36.     Samples from the June 7, 2011 procedure were submitted to pathology and were reported as cancer of the rectum. Dr. Ruddy did not order any further diagnostic studies, but referred the Plaintiff to Albany VA Hospital on July 7, 2011 for chemo-radiation, which was later changed to July 13, 2011, so he could be placed on the Albany shuttle. At that time the Plaintiff's cancer was so large the VA physicians wanted to shrink the tumor with radiation and chemotherapy before having the operation done. The Plaintiff's cancer was subsequently Staged at T3N0M0.

37.     Pathology results reported on June 7, 2011 indicated a "moderately differentiated adenocarcinoma, rectal mass, with extensive sub mucosal involvement accompanied by desmoplasia." There was initial concern that the tumor might be metastatic in nature, but ultimately determined to be a primary tumor, but no distance metastatic disease present.

38.     The Plaintiff was finally brought to the VA Hospital on November 2, 2011 for definitive surgical treatment of his rectal cancer. At that time, Dr. Ruddy performed a laparoscopic assisted lower anterior resection assisted by Dr. Bazaz, Dr. Fey and resident surgeon, Kalenda Kasangana.

39.     The operative report dated November 29, 2011 goes into great detail of the issues surrounding surgery of that date. It is clear through the course of the operation that radiation had caused a fusion between the rectum and the surrounding tissues, and there was a great deal of damage done to the abdominal area caused by the chemo-radiation course of therapy that was completed at Albany VA. As a result, at surgery, the surgical team could not re-connect the recto-sigmoid colon because of the extensive damage and scar tissue. The surgery consequently was completed with the addition of a

permanent colostomy as the sigmoid colon was brought up into the left lower quadrant. A colostomy site was opened up and the colon was brought through. In short, the intervening course of chemo-radiation made the surgery extremely difficult, and made it impossible to re-connect the recto-sigmoid during the procedure. As a result, it was decided to attempt a take-down of the colostomy at a later date.

40.     Following what was said to be a two year healing period, the Plaintiff returned to the VA Hospital under the care of Amit Goyal for purposes of reversing the colostomy. Fortunately, exploration of the abdomen showed no evidence of any recurrent disease or cancer in the abdomen.

41.     The surgical team discovered loops of bowel stuck down into the pelvis and a myriad of adhesions in the area of the recto-sigmoid, making repair of the colostomy impossible. During the attempt at reanastomosis, a portion of the small bowel was injured and additional loop serosal tears were also made in the bowel wall. These injuries were repaired at surgery.

42.     Additionally, a short segment of the bowel, which had a full thickness tear was also resected at the surgery, again caused by the dense adhesions. Dr. Goyal could neither see nor find the rectal stump for purposes of reanastomosis, and introduced a dilator to find the stump. Because of extensive scar tissue present, Dr. Goyal was advised not to attempt to reverse the Hartman's stump as the bladder was out of position and firmly attached by scar tissue and scarred in the area of the sacrum.

43.     During the procedure, again because of the damaged tissue and dense adhesions present, in the attempt to find the rectal stump, the inferior epigastric artery was injured, additional sections of the bowel were injured, and the Plaintiff sustained the arterial injury at surgery.

44.     At that point, the surgical team gave up, and a JP drain was used to drain the abdominal cavity. The Plaintiff's abdomen was then closed, without reanastomosis of the rectal stump. The colostomy was left undisturbed and, of necessity, remained in place as before the operation. The attempted surgical procedure was a dismal failure, with resultant new injuries.

45.     As a result of the foregoing, the Plaintiff, Harry A. Teeter,  has been caused to sustain serious and permanent disabling injuries as a result of the above, and otherwise has been caused to sustain pain, suffering, mental anguish and distress, loss of enjoyment of life, and severe emotional upset, additional surgical procedures with resultant pain and suffering and long lasting and permanent injuries to his abdomen and the area of the recto-sigmoid, all to his detriment, causing him to be sick, sore lame and disabled, and otherwise causing him to have the likelihood of additional procedures into the future, and the definite ongoing use of a colostomy bag for the rest of his life.  Plaintiff, as a result of all of the above hereby seeks judgment is such fair and reasonable amount as may be awarded by a fact-finder of the facts, circumstances, and injuries in this case

### PLAINTIFF'S INJURIES DUE TO THE MEDICAL MALPRACTICE

46.     Plaintiff has been significantly and permanently injured as a result of the negligence, carelessness and recklessness of the Defendants in this case. Plaintiff has been forced to live with pain, suffering, embarrassment, inconvenience, and to otherwise adjust his life to live with his ongoing injuries, the ongoing colostomy, and the ongoing pain and suffering that continues and, upon information and belief will continue, into the future from the injuries and adhesions within the abdomen and in the area of the recto-sigmoid.  He will also be forever burdened with the permanent colostomy, the constant changing of the equipment and the emptying of bags and fecal material, the ongoing cost of the care and treatment of the colostomy, and the significant effect that the colostomy has had and will continue to have on the Plaintiff's intimacy, emotional attachment with others, and the relations that form part of a natural person's life.  Plaintiff has been so injured as a result herein that he will forever be charged with the ongoing care and upkeep of the colostomy, and all of the inconvenience, embarrassment, pain, suffering, mental anguish and distress and the ongoing problems associated with the colostomy bag, including the loss of ability to participate in the joys of life as he formerly knew

11

them, and otherwise participate in sports, and other activities which are now significantly limited.

47.    Plaintiff is now and forever afflicted with retrograde ejaculation, the inability to ejaculate to a conclusion, or to foster children, ongoing and permanent urinary incontinence and ongoing abdominal pain, constant leakage and the embarrassment derived therefrom, and the ongoing pain and suffering mental anguish and distress. Plaintiff has had, and continues to have ongoing and significant difficulties with activities of daily living. The Plaintiff continues to have urinary problems and they are considered to be permanent.

48.    All of the injuries and complications suffered by Plaintiff were caused by the negligence and medical malpractice of the Defendants herein.  As a direct and proximate result of the negligence, recklessness, and carelessness of the Defendants herein, and without any negligence of the Plaintiff contributing thereto, the Plaintiff, Harry A. Teeter, has been caused to sustain severe, permanent and disabling injuries, pain and suffering, loss of enjoyment of life, emotional distress, emotional anguish, and has otherwise been caused to seek medical care and attention, has incurred and will incur in the future,  medical bills, hospital bills, and has otherwise been injured.

49.    As a direct and proximate result of the negligence, carelessness and recklessness of the Defendants  herein and without any negligence of the Plaintiff contributing thereto, the Plaintiff hereby seeks judgment for his losses in such fair and reasonable amount as may be awarded by the Court and/or a jury of his peers, together with such other and further relief as to a court and jury may seem just and proper including costs and disbursements of this action, legal fees, and interest from the date of the events alleged herein.

## AS AND FOR A FIRST CLAIM AS AGAINST ALL DEFENDANTS< PLAINTIFF HEREBY ALLEGES AS FOLLOWS:

50.   Repeats and re-alleges the allegations set forth in Paragraphs numbered 1 through 49 as though fully set forth herein.

51.   Upon information and belief, the Defendants herein were negligent, careless and reckless, and otherwise guilty of Medical Negligence, in that said Defendants, individually, jointly, and severally were negligent, careless, and reckless in that said Defendants, both institutionally and in their individual right failed to properly care for the Plaintiff given the signs and symptoms that he presented at the aforesaid time and place;  failed to understand and appreciate the serious nature of Plaintiff's condition as it then and there presented;  failed to take a full and complete history of the Plaintiff's true conditions and history as it existed at the aforesaid time and place; failed to get the Plaintiff in for adequate testing and evaluations;  failed to have adequate systems in place so as to assure that the Plaintiff received reasonable medical care at the aforesaid time and place;  failed to make sure that the Plaintiff received adequate care and treatment at the time said treatment was necessary and called for; failed to get the Plaintiff in for a colonoscopy and other studies when the same was recommended and called for;  failed to explain to the Plaintiff the true nature and extent of the seriousness condition at the aforesaid time and place;  failed to understand and appreciate the nature of Plaintiff's true condition as it then and there presented;  failed to design a system or plan that worked reasonably well to get veterans into the hospital with appropriate contact and return of phone calls when such items are necessary and appropriate;  failed to give to the Plaintiff the time and effort to return his calls to the facility and the Gastroenterology Group;  failed to make a concerted effort to get the Plaintiff into the Gastroenterology Department at the VA knowing of the ominous signs and symptoms that Plaintiff was exhibiting at the aforesaid time and place;  failed to communicate from one Hospital Department to another the seriousness of Plaintiff's signs and symptoms and the need for a STAT evaluation of the Plaintiff's colon by colonoscopy of some other effective diagnostic equipment;  failed to make arrangements to get

the Plaintiff immediately seen in the Gastroenterology Department;  failed to, in a reasonable and direct fashion, follow up on the Plaintiff's symptoms of diarrhea and ribbon like flat stools, when said signs and symptoms, when presented, raise the presumption that the Plaintiff has colon cancer until proven otherwise;  failed to thoroughly assess and/or make sure appropriate testing was done to have a proper assessment complete, when it was evident that Plaintiff had a serious condition that was exhibited by the signs and symptoms presented; failed to have appropriate follow up available for the Plaintiff when needed;  failed to have the Plaintiff examined appropriately, and upon said proper examination, failed to have Plaintiff admitted for immediate recto-sigmoid surgery to remove the cancer tumor at an early date; wasted time and valuable months while the cancer within Plaintiff's rectum grew and became more virulent;  failed to conduct surgery at an early time to assure that Plaintiff's tumor was removed at the earliest possible date, and with a lessor chance of becoming metastatic;  failed to assure that the Plaintiff received good and accepted care and treatment;  failed to understand and appreciate, as an institution and as practitioners the need to provide good and accepted care at the Syracuse VA Medical Center for Veterans such as the Plaintiff herein;  ordered that the Plaintiff have chemo-radiation before surgery to remove the tumor;  waited until such a time that it was required to have chemo-radiation before surgery, so as to shrink the tumor because of the delay occasioned by the Defendants negligence;  failed to understand and appreciate the damage that chemo-radiation would do the Plaintiff's abdomen and especially the nature of the adhesions and scarring making it impossible to reverse the Plaintiff's colostomy;  failed to take due care during the surgeries that were done upon the Plaintiff;  failed to use adequate care when traversing the structures and organs of Plaintiff's abdomen during the surgeries; failed to take such care so as to prevent injury to Plaintiff's bowel, bladder, reproductive organs and system;  failed to take such steps as to prevent the development of retrograde ejaculation;  failed to take due care not to injure the Plaintiff's bladder, blood vessels, bowel wall, and other structures within the

14

abdomen; failed to understand and appreciate that by going forward with chemo-radiation that the Plaintiff would develop significant damage to the internal organs and structures and would otherwise cause the Plaintiff to have such significant damage so as to cause permanent and disabling injuries, with the resultant pain, suffering , mental anguish and distress; went ahead with the second operation knowing of the dangers and issues surrounding the significant damage to the structures within Plaintiff's abdomen; failed to understand and appreciate that by trying to reverse the colostomy under the conditions of the damaged interior structures that additional damage and permanency would develop; failed to use adequate care during the second surgery so as to prevent injury to the Plaintiff; failed to understand and appreciate the seriousness of the condition of Plaintiff's interior organs after chemo-radiation; removed the Plaintiff's cancerous tumor in such a fashion so as to make it difficult and in fact impossible to ever be in a position to take down or reverse the colostomy; failed to advise the Plaintiff of all of the risks inherent with regard to the nature of his condition and the need for immediate treatment; failed to advise the Plaintiff of the risks of the second surgery given the damage that was resultant from the chemo-radiation; failed to fully inform Plaintiff of the risk of going forward with chemo-radiation given the nature of the likelihood of damage to the interior organs and vessels; performed the second operation upon the Plaintiff in such a negligent, careless and reckless manner so as to cause significant injury to the Plaintiff's interior structures, organs, vessels and tissues; provided medical care and treatment in such a negligent fashion so as to cause severe and permanent injury to Plaintiff; failed to—on a National level—and throughout the Veterans Administration, provide adequate services and care to those Veterans who use the services of the Veterans Hospitals and physicians and care network; failed to, from the top down, from Washington to the local level, provide an adequate and suitable structure that was designed to provide good and appropriate medical care and treatment; failed to give to the Veterans that would use the facility a modicum of care that would allow for immediate

care to the Veteran and Plaintiff herein when such care was appropriate and needed; failed to have adequate systems in place to assure that Veterans could get phone calls back from a Hospital Department when looking to follow up on medical advice from the physician recommendation of the primary care physician; failed to develop any kind of a plan or structure that would allow for good and proper medical care through the VA Administration and hospital and medical care system; failed to have adequate people in administrative positions that would assure that a reasonable standard of medical care was available at the VA Hospitals; allowed a system of fraud, negligence, inattentiveness, and woeful response to the entire system of VA guided health care; ran an inept system of health care throughout the VA Hospital administration, cause servicemen and Veterans to fail to get adequate medical care, causing in many cases, death and serious physical injuries such as those suffered by the Plaintiff herein; allowed a flawed system of Health Care to develop and flourish throughout the VA system such that Veterans of the type and kind as the Plaintiff herein were deprived of suitable health care services, and otherwise promoted a system where the patients of the VA Hospitals and care facilities were given lack luster and terrible care and treatment, evidenced in this case by the myriad of departures from the good and accepted practice of the care providers and the total disregard for the rights of the Plaintiff by ignoring his many telephone calls to get the appropriate care that was suggested, ordered, and called for; and said Defendants were otherwise negligent, careless and reckless with regard to the health care rendered to the Plaintiff herein.

52.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has sustained and will continue to sustain severe, permanent and ongoing physical injuries, severe emotional distress, mental anguish, economic losses and other damages. As a direct result, Plaintiff expended money and will continue to expend money for medical bills and expenses and will have ongoing and permanent pain, suffering, mental anguish and distress, permanent and lasting disabilities, ongoing lack

16

of enjoyment of life, and said Plaintiff has otherwise been damaged, injured, and permanently scarred and disfigured, together with injuries to the internal organs and structures which has left him incontinent, unable to ejaculate, prone to retrograde ejaculation, plagued with urinary incontinence, with all the embarrassment and loss of intimacy that goes with such injuries, as well as the pain and ongoing disfigurement including the colostomy bag which smells, makes odd noises, and keeps the Plaintiff - such that intimacy suffers and becomes impossible; thus seriously limiting the ability of the Plaintiff to enjoy relationships and intimacy as well as other permanent and disabling injuries.

53.    At all relevant times, Defendants, and each of them, jointly, severally, and individually and as a group and as an institution, had a duty and continued to owe a duty to Plaintiff to provide appropriate and adequate medical care, perform appropriate, adequate and timely medical treatment and diagnostic tests, to obtain appropriate consultations and to otherwise provide proper medical care and treatment in a timely and reasonable fashion.

54.    As a direct and proximate result of Defendants' negligence, carelessness and recklessness, as well as the Defendants' willful, wanton and total disregard of the rights of the Plaintiff and other Veterans in similar circumstances to obtain reasonable health care, the Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages and all other losses as set forth above in great detail.

55.    As a direct and proximate result of the wrongful activities of the Defendants herein, the Plaintiff hereby seeks such fair and reasonable amount as may be determined by a fact finder of his peers, or such Federal Court Judge in accord with the Federal Tort Claims Act, together with such other and further relief as to the Court may seem just and proper..

**WHEREFORE,**   Plaintiff hereby demands judgment as against the Defendants named in this action, and each of them, jointly, severally and individually, in such fair and reasonable amount as

may be awarded by the Court for the negligence, carelessness, recklessness and the willful, wanton and reckless disregard of the rights of the Plaintiff and the public as a whole, particularly all such Veterans similarly situated as the Plaintiff, and for the physical injuries, mental and emotional distress, economic losses, future medical expenses and future loss of earnings, together with such other and further relief as to the Court may seem just and proper, together with interest from the date of events alleged herein, attorney's fees, and  costs and disbursements incurred in the prosecution of this action.

**DATED:**   January 22, 2015.

CHERUNDOLO LAW FIRM, PLLC

By:

John C. Cherundolo, Esq.
Bar Roll No. 101339

*Attorneys for Plaintiff*
Office and Post Office Address
AXA Tower I, 17th Floor, Suite 1710
100 Madison Street
Syracuse, New York 13202-2078
Telephone (315) 449-9500

**FAX SERVICE NOT ACCEPTED**